UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
ANDRE SPAULDING,              :
                              :
          Petitioner,         :
                              :   Civil No. 3:12CV1264(AWT)
v.                            :
                              :
UNITED STATES OF AMERICA,     :
                              :
          Respondent.         :
                              :
------------------------------x
```

## RULING ON MOTION PURSUANT TO 28 U.S.C. § 2255

Petitioner Andre Spaulding, proceeding pro se, has filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence.  The petitioner claims that he is entitled to relief because his counsel provided constitutionally ineffective assistance.  For the reasons set forth below, the petitioner's contentions are without merit, and the motion is being denied without a hearing.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The government and the petitioner agree on the following factual and procedural background.  (See Government's Response to Spaulding's Petition Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. No. 3) ("Response") at 2-15; Reply to Government's Response to Spaulding's Petition Under 28

U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. No. 4) ("Reply") at 2).

On December 2, 2009, a federal grand jury sitting in Bridgeport returned a six-count Indictment against the petitioner and sixteen others charging various narcotics offenses.  The Indictment charged the petitioner with conspiracy to possess with the intent to distribute powder cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 846.  Law enforcement officers could not locate the petitioner when they arrested his co-defendants on December 2 and 3, 2009.  He remained a fugitive until approximately January 19, 2011, when he was taken into state custody on a different state charge.

On February 3, 2010, after seven of the defendants had pleaded guilty to the charges in the original Indictment, the same grand jury returned a six-count Superseding Indictment against the petitioner, the remaining nine co-defendants, and two additional defendants.  Specifically, the Superseding Indictment charged the petitioner in Count One with conspiring to possess with the intent to distribute five grams or more of crack cocaine and an unspecified quantity of powder cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 841(b)(1)(C) and 846.  Between the time of the return of the Indictment and the Superseding Indictment, the government accumulated additional evidence showing that the petitioner had extensive

-2-

involvement in the distribution of crack cocaine during the time period of the charged conspiracy.

On March 11, 2010, the petitioner pleaded guilty to the portion of Count One of the Superseding Indictment which charged him with conspiracy to possess with the intent to distribute five grams or more of crack cocaine.  Prior to the entry of the guilty plea, the government filed a second offender notice alleging that the petitioner had sustained a prior drug felony conviction and, therefore, was subject to enhanced penalties under 21 U.S.C. § 841(b)(1)(B).  Specifically, the filing of the second offender notice caused the mandatory minimum incarceration term to increase from five years to ten years.

At the time of the guilty plea, the petitioner entered into a written plea agreement.  In the plea agreement, the petitioner agreed that the quantity of crack cocaine involved in his offense was greater than 150 grams, but not greater than 500 grams.  The government agreed to recommend a three-level reduction for acceptance of responsibility, resulting in an adjusted offense level of 29.  The parties also agreed that the petitioner had accumulated at least thirteen criminal history points and fell into Criminal History Category VI, so that his Chapter Two guideline incarceration range was 151-188 months.  The parties indicated that the petitioner could be a career offender under U.S.S.G. § 4B1.1 and, if so, the base offense

level would be 37, instead of 32, and the adjusted guideline range would be 262 to 327 months.  Finally, the government agreed to defer to the court on the issue of whether the 100 to 1 ratio for crack and powder cocaine penalties reflected the factors set forth in 18 U.S.C. § 3553(a), and the petitioner agreed to waive his right to appeal or collaterally attack the conviction or the sentence imposed, provided the sentence did not exceed 188 months.

During the plea canvass, the court placed the petitioner under oath and asked him "Mr. Spaulding, do you understand that now that you've taken this oath, your answers to my questions will be subject to the penalties for perjury or for making a false statement if you do not answer truthfully," to which the petitioner replied "Yes, Your Honor."  (Tr. 03/15/2010 at 5.) In addition, the court asked the petitioner a number of questions which are directly relevant to the claims he makes in his habeas petition.  In particular, the court asked some basic pedigree questions of the petitioner, and he answered them clearly and concisely.  (See id. at 6-7.)  He confirmed that he had not taken any drugs, medicine, pills or alcohol in the preceding 48 hours and that his mind was clear and he understood the proceedings.  (See id. at 7.)  The court also confirmed with defense counsel that he had discussed the case with the petitioner, that the petitioner "understands the rights he will

-4-

be waiving by pleading guilty[,]" that the petitioner was competent and "capable of understanding the nature of these proceedings." (Id. at 7-8.)  The court then confirmed with the petitioner that he had "had an opportunity to discuss [his] case with [his] attorney and [was] . . . satisfied to have him represent [him]." (Id. at 8.)

After reviewing the charge against the petitioner and the various trial rights that he was relinquishing (see Tr. 03/15/2010 at 8-13), the court asked him about his plea agreement.  The petitioner signed the plea agreement in open court and acknowledged that he had also signed it about eleven days prior to the plea hearing.  (See Tr. 03/15/2010 at 14.)  He said that he had read the agreement, understood the agreement, discussed it with his attorney, and had no questions about it. (See id. at 15.)  He also stated that he understood the provision in the agreement under which he waived his right to appeal or collaterally attack his conviction and sentence provided that his sentence did not exceed 188 months' incarceration.  (See id. at 15-16.)  Finally, he listened as the prosecutor summarized the provisions of the plea agreement and confirmed that "the agreement, as outlined by the Assistant United States Attorney, fully and accurately reflect[ed] [his] understanding of the agreement [had] entered into with the government." (Id. at 16-19.)  The petitioner specifically

stated that, other than the promises contained in the agreement, no one had "made any promises" that were causing him to plead guilty or waive his right to appeal or collaterally attack his sentence. (Id. at 20.) He also stated that no one had "made any threats against [him]" or had coerced him in any way to plead guilty or waive his appeal and collateral attack rights. (Id..)

After reviewing the plea agreement, the court discussed the maximum statutory penalties and the sentencing process, describing, in detail, the advisory nature of the Sentencing Guidelines and the consideration that would be made under 18 U.S.C. § 3553(a). (See Tr. 03/15/2010 at 20-23.) The court confirmed with the petitioner that he had reviewed with his attorney "how the mandatory minimum sentence and the Sentencing Guidelines relate[d] to [his] case." (Id. at 23.) The petitioner acknowledged that his attorney had explained how his "sentence may be determined" and that the court was not "bound by any explanation or recommendation made by [his] attorney or by the government." (Id..) The court also confirmed with defense counsel that he had "discussed with [his] client how the mandatory minimum sentence and the Sentencing Guidelines relate to his case and explained to him how his sentence may be determined." (Id. at 24.) Defense counsel stated that he had advised the petitioner that the court was not bound by any

sentencing recommendation by defense counsel, the government or the plea agreement. (See id..)

After the petitioner had advised the court, in his own words, of what he had done to make him guilty of the charged offense and the petitioner had agreed to the government's factual basis for the offense, the court accepted the guilty plea and specifically advised the petitioner of, inter alia, the process by which he would meet with the Probation Officer to provide information for the Presentence Report and the role of the Presentence Report in the sentencing process. (See Tr. 03/15/2010 at 34.)

The Presentence Report, last revised before sentencing on August 19, 2011 (Doc. No. 760) (the "PSR"), stated that the base offense level, under the November 1, 2009 version of the Sentencing Guidelines, was 32 because the petitioner was involved in distributing between 150 and 500 grams of crack cocaine.[1]  (See PSR ¶ 24.)  The base offense level then increased to 37 because the petitioner was a career offender under U.S.S.G. § 4B1.1.  (See PSR ¶ 30.)  A three-level reduction for

---

[1] Under the November 1, 2010 guidelines, which applied the new 18 to 1 ratio for powder and crack cocaine penalties under the Fair Sentencing Act of 2010, the adjusted offense level under Chapter Two did not change from 32 because the quantity of crack cocaine involved in the petitioner's offense exceeded 280 grams, but did not exceed 840 grams. See PSR, Third Addendum.

acceptance of responsibility, resulted in a total offense level of 34.  (See PSR ¶¶ 31-32.)

     As to the petitioner's criminal record, the PSR placed him in Criminal History Category VI because he had accumulated 19 criminal history points, 16 of which were based on prior convictions, two of which were based on the fact that the petitioner committed the offense while serving a term of state probation, and one of which was based on the fact that the petitioner committed the offense within two years of having been released from state incarceration.  (See PSR ¶ 45.)  The petitioner had three prior convictions for sale of narcotics, one prior conviction of possession of narcotics and two prior convictions for third degree assault.  (See PSR ¶¶ 34-39.)  Specifically, in 2001, he was convicted, in three separate cases, of one count of Sale of Narcotics and two counts of Third Degree Assault and sentenced to a total effective term of three years' incarceration, execution suspended, and two years' probation.  (See PSR ¶¶ 34-36.)  He later violated his probation on this sentence and received two years' incarceration.  (See PSR ¶ 34.)  In 2003, he was convicted of Sale of Narcotics and sentenced to six years' incarceration, execution suspended after 18 months, and four years' incarceration.  (See PSR ¶ 37.)  The petitioner violated his probation on this sentence as well and was later sentenced to an additional term of three years'

incarceration.  (See PSR ¶ 37.)  In 2005, he was convicted of Sale of Narcotics and sentenced to 10 years' incarceration, execution suspended after four years, and three years' probation.  (See PSR ¶ 38.)  He violated the terms of his probation stemming from this sentence by committing the offense in this case. Finally, in 2010, he was convicted of Possession of Narcotics and sentenced to two years' incarceration.  (See PSR ¶ 39.)  The arrest which gave rise to the conviction in this case occurred on August 19, 2010.  (See PSR ¶ 39.)

     The petitioner also was in Criminal History Category VI by virtue of his status as a career offender.  At a Criminal History Category VI and an adjusted offense level of 34, the petitioner faced a Chapter Four guideline incarceration range of 262 to 327 months.  (See PSR ¶ 54.)

     The petitioner submitted a sentencing memorandum and asked for a sentence below the 262 to 327 month guideline range. In its sentencing memorandum, the government advocated for application of the Fair Sentencing Act of 2010 ("FSA"), which would reduce the maximum statutory term of imprisonment from life to thirty years and, as a result, reduce the total offense level to 31 and the guideline incarceration range to 188 to 235 months. At sentencing on August 19, 2011, the court applied the FSA's new statutory penalties and concluded that the correct guideline range was 188 to 235 months. After considering the

petitioner's various arguments for a lower sentence, the court imposed a non-guidelines sentence of 150 months based largely on the petitioner's post-arrest rehabilitative efforts.

Neither the petitioner nor the government appealed the sentence.

## II.   LEGAL STANDARD

Federal prisoners can challenge a criminal sentence pursuant to 28 U.S.C. § 2255 only in limited circumstances.  The Second Circuit has held that a "collateral attack on a final judgment in a criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice."  Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (internal citation and quotation marks omitted).  Section 2255 provides that a district court should grant a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  However, "[t]he language of the statute does not strip the district courts of all discretion to exercise their common sense."  Machibroda v. United States, 368 U.S. 487, 495 (1962).  In making its determination regarding the necessity of a hearing, a district court may draw upon its personal knowledge and recollection of the case.  See Blackledge

-10-

v. Allison, 431 U.S. 63, 74 n.4 (1997); United States v. Aiello, 900 F.2d 528, 534 (2d Cir. 1990).  A section 2255 petition, or any part of it, then, may be dismissed without a hearing if, after a review of the record, the court determines that the motion is without merit because the allegations are insufficient as a matter of law.

## III. DISCUSSION

### A.   Ineffective Assistance of Counsel

The petitioner claims that his attorney provided constitutionally ineffective assistance during the plea negotiation stage, pursuant to Missouri v. Frye, 132 S. Ct. 1399 (2012) and Lafler v. Cooper, 132 S. Ct. 1376 (2012), by giving him "faulty" advice that caused him to "accept the plea agreement when there were no real benefits to [him]." (Memorandum in Support of Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. No. 1-1) ("Pet.'s Memorandum") at 2.)  The petitioner supports this claim by alleging that his attorney: (1) failed to communicate with him before the plea agreement; (2) failed to explain the legal implications of his plea agreement (Pet.'s Memorandum at 11-12, 15-17); Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. No. 1) ("Petition") at 5; (Declaration at 1)); (3) caused him to be classified as a career criminal (Declaration at 1); (4) told him that he knew the prosecutor,

-11-

and the petitioner would receive a shorter sentence if he pled
than if he went to trial and lost (Pet.'s Memorandum at 14-15,
Petition at 5, Declaration of Andre Spaulding (Doc. No. 1-1,
Exhibit 1) ("Declaration") at 1-2); and (5) told him that he
should enter into a plea agreement because he was "in the state
and not around any co-defendants," so "there would not be anyone
to bother [him]." (Petition at 5.)

    To prevail on an ineffective assistance of counsel claim,
the petitioner must show that his "counsel's representation fell
below an objective standard of reasonableness" and that "there
is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have
been different." Strickland v. Washington, 466 U.S. 668, 687-
88, 694 (1984). The right to effective assistance of counsel
extends to the plea bargaining process. See Missouri v. Frye,
132 S. Ct. 1399, 1407-08 (2012) (holding that defense counsel
provided ineffective assistance by failing to inform the
defendant of a favorable plea offer); Lafler v. Cooper, 132 S.
Ct. 1376, 1384 (2012) (holding that defense counsel provided
ineffective assistance where counsel informed the defendant of a
favorable plea offer which the defendant rejected based on the
deficient advice of counsel). During plea negotiations
defendants are "entitled to the effective assistance of

competent counsel." <u>McMann v. Richardson</u>, 397 U.S. 759, 771 (1970).

"The court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" <u>United States v. Aguirre</u>, 912 F.2d 555, 560 (2d Cir. 1990) (quoting <u>Strickland</u>, 466 U.S. at 689). "The court's central concern is not with 'grad[ing] counsel's performance,' but with discerning 'whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.'" <u>Id.</u> at 560 (quoting <u>Strickland</u>, 466 U.S. at 696-67) (internal citations omitted).

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the <u>Strickland</u> standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation

amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Harrington v. Richter, 562 U.S. 86, 105 (2011) (internal citations and quotation marks omitted).

### 1.   Failure to Communicate with the Petitioner

The petitioner asserts that his counsel provided constitutionally ineffective assistance during the plea negotiation stage because he "never showed [the petitioner] a copy of the plea agreement" and "never spoke to [the petitioner] when [the petitioner] would call him," and "the only time [the petitioner] saw [counsel] was when [the petitioner] pled guilty and when [the petitioner] was sentenced." (Petition at 5.) The petitioner also asserts that counsel "never responded to [his] letters or phone calls." (Declaration at 1.) This claim is without merit.

The petitioner's claim is contradicted by his responses at the plea hearing, where the court placed the petitioner under oath and asked him: "Mr. Spaulding, do you understand that now that you've taken this oath, your answers to my questions will be subject to the penalties for perjury or for making a false statement if you do not answer truthfully," to which the petitioner replied "Yes, Your Honor." (Tr. 03/15/2010 at 5.) The petitioner then stated that he had read the plea agreement,

discussed it with his attorney[2], and was satisfied with his

representation:

> THE COURT: Mr. Spaulding, have you had an opportunity
> to discuss your case with your attorney and are you
> satisfied to have him represent you?
>
> THE DEFENDANT: Yes, Your Honor.
>
> . . .
>
> THE COURT: . . . Mr. Spaulding, have you read this
> plea agreement?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Do you understand it, sir?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Have you discussed it with your attorneys?
>
> THE DEFENDANT: Yes, sir.

(Tr. 03/15/2010 at 8, 14-15.)  Furthermore, as explained in

Section 2 below, the petitioner also stated at the plea hearing

that he was aware of numerous specific elements of his plea

agreement.  The petitioner's statements contradict his

contention now that he received ineffective assistance of

counsel because his attorney failed to communicate with him

before he entered into the plea agreement.

---

[2] At times the transcript refers to "attorneys" because the
defendant's counsel was assisted by an associate counsel.

-15-

### 2.   Failure Explain the Legal Consequences of Entering into the Plea Agreement

The petitioner asserts that defense counsel failed to explain to him the legal implications of pleading guilty.  These claims are without merit because they are contradicted by the petitioner's statements at the plea hearing.

#### a. Waiver of the Right to Appeal

The petitioner asserts that defense counsel failed to explain that by entering into the plea agreement he waived certain rights to appeal (Pet.'s Memorandum at 11-12, 15-17).

At the plea hearing, the court specifically asked the petitioner if he understood that he would lose his right to appeal his conviction as a consequence of his guilty plea, and the petitioner responded that he did:

> THE COURT: If you plead guilty and I accept your plea, you will be giving up your constitutional right to a trial and the other rights I have just discussed. There will be no trial of any kind and no right to appeal the conviction. The court will simply enter a finding of guilty on the basis of your guilty plea. Do you understand that, sir?
>
> THE DEFENDANT: Yes, Your Honor.

(Tr. 03/15/2010 at 12-13.)  The petitioner also stated that he understood that he would lose his right to appeal his sentence if it did not exceed certain thresholds:

> THE COURT: And I'm looking at page 5 now, Mr. Spaulding. Do you understand -- it's Paragraph Number 5 on page 5. Do you understand that under some

-16-

circumstances, the defendant can appeal or
collaterally attack his sentence?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that if the sentence in
your case does not exceed 188 months, you are giving
up your right to appeal or collaterally attack your
sentence?

THE DEFENDANT: Yes, Your Honor.

(Tr. 03/15/2010 at 16.)

### b. Sentencing

The petitioner asserts that his attorney failed to explain

to him how much time in prison he faced and what information the

court would use to determine his sentence:

Counsel should have been fully prepared to explain the
[court's] use of the PSR and to inform Spaulding as to what
sentence he would be exposed to . . . . [Counsel] failed to
explain to Spaulding . . . how the court would determine
the drug amounts that would be attributed to him, his role
in the conspiracy . . . .

(Pet.'s Memorandum at 11, 15-17.)  As to the petitioner's claims

that counsel failed to explain what potential sentence he faced

if he pled guilty, the petitioner stated at the plea hearing

that he was aware of both the minimum and maximum sentence for

the crime to which he was pleading guilty.

THE COURT: Have you consulted with your attorneys
about the charges, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand the charge?

THE DEFENDANT: Yes, Your Honor.

-17-

THE COURT: Do you understand that the law provides for a ten-year minimum sentence for the offense to which you intend to plead guilty?

THE DEFENDANT: Yes, Your Honor.

(Tr. 03/15/2010 at 8-9.)

THE COURT: . . . Mr. Spaulding, I now want to talk with you about the maximum sentence that could be imposed in your case. You understand that if you plead guilty, you could receive a sentence of imprisonment that can be as long as life in prison?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that you also face a supervised release term of as much as a life term?

THE DEFENDANT: Yes, Your Honor.

(Tr. 03/15/2010 at 20.)

The petitioner also stated that he had reviewed the

application of the Sentencing Guidelines to his case with his

attorney:

THE COURT: Do you also understand that if I do not accept any recommendation in your plea agreement related to the Sentencing Guidelines, you will still be bound by your plea? That means you will have no right to withdraw your plea.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Spaulding, have you reviewed with your attorneys how the mandatory minimum sentence and the Sentencing Guidelines relate to your case?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have your attorneys explained to you how your sentence may be determined?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that I am not bound by any explanation or recommendation made by your attorney or by the government?

THE DEFENDANT: Yes, Your Honor.

(Tr. 03/15/2010 at 23.)  Furthermore, the court explained how

the sentencing process works:

THE COURT: Also, in performing the Guidelines calculation, the sentencing judge must first determine the sentencing range that would typically result from the combination of your particular offense and your criminal history and, second, determine whether there are facts about your case that would lead the Court to conclude that a higher range or a lower range is the appropriate recommendation under the Guidelines. Do you understand that, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: In addition, in your case the statute provides for a mandatory minimum sentence. Thus, the Court cannot impose a sentence in your case that is less than the mandatory minimum sentence. Do you understand that, sir?

THE DEFENDANT: Yes.

THE COURT: I want to emphasize that until the time of sentencing when the Court has received a Presentence Report about you and has heard from you and from your attorney and from the government, you cannot know with certainty what the recommended sentencing range calculated using the Sentencing Guidelines will be or know how much weight the Court will put on which particular factors under the statute, including the Sentencing Guidelines. Do you understand that, sir?

THE DEFENDANT: Yes, Your Honor.

(Tr. 03/15/2010 at 22-23.)

With respect to the drug amounts that would be attributed to the petitioner at sentencing, the court asked the petitioner at the plea hearing if he had discussed with his attorney the fact that the quantity of crack cocaine involved in his offense was between 150 and 500 grams, and the petitioner replied that he had:

> THE COURT: Have you discussed with your attorneys that on page 3 at the top you are agreeing that the quantity of cocaine base, or crack cocaine, involved in your offense is at least 150 grams but less than 500 grams?
>
> THE DEFENDANT: Yes, Your Honor.

(Tr. 03/15/2010 at 15.)

With respect to the petitioner's role in the conspiracy, the petitioner described his offense conduct in his own words at the plea hearing:

> THE COURT: . . . Mr. Spaulding, would you please tell me, in your own words, what you did that shows that you are in fact guilty of the charge to which you are now offering to plead guilty?
>
> THE DEFENDANT: I called William Peña and ordered cocaine, cocaine base. I cooked up the cocaine into crack, resold it to my customers, and got more than 5 grams of crack for resale to my customers.

(Tr. 03/15/2010 at 27.) The government then summarized its evidence that the petitioner had engaged in the conspiracy, and the petitioner stated that he agreed with the government's summary of his offense conduct:

As for Mr. Spaulding, he was intercepted starting on
September 27, 2009 and going up through about November 27,
2009.

During the course of those months, he was involved in about
nine separate transactions based on the phone calls and the
surveillance. Two of those transactions he was surveilled
meeting up with these individuals in New York. And on one
of those occasions he was captured on video. I'll just go
through them very quickly.

On September 27, 2009, he negotiated the purchase of $1,000
of cocaine.

October 3, 2009 was $1,000 of cocaine.

October 22, 2009 was $1,100 worth of cocaine.

October 25, 2009 was $2,170 worth of cocaine, also
referenced as 56 grams.

October 30, 2009 was $1,350 worth of cocaine.

November 5, 2009 was $1,900 worth of cocaine.

November 17, 2009 was $1,500 worth of cocaine.

November 21, 2009 was $1,150 worth of cocaine.

And on November 27, 2009, it was talked about as $1,500
worth of cocaine, but he only provided them with $1,390.

On all those locations he dealt predominantly with William
Peña, although on two occasions Manny was also involved,
and on two occasions he dealt with Wilson Peña.

As far as whether it was cocaine powder or crack cocaine,
the calls themselves was only specific as to the price. And
typically they would charge around the same for powder and
crack, although it did vary a little bit. Typically, they
charged between $35 and $40 per gram. But both William and
Wilson Peña would testify that they mostly dealt crack
cocaine to Mr. Spaulding and specifically recalled certain
of the transactions I just mentioned that were crack
cocaine, that powder cocaine was the exception rather than
the rule. The one I'll mention is the October 25, 2009,
that was a day when they specifically recall selling him 56

grams of crack cocaine. And there were several occasions
throughout the wire tap where they simply didn't have
powder cocaine to sell, was one of the ways we were able to
determine what they were selling. And they would say over
the phone that they didn't have any soft or they ran out of
soft; that was the way we knew what they were selling on
that particular day.

Thank you, Your Honor.

THE COURT: Thank you.

Mr. Spaulding, do you agree with Mr. Spector's summary of
what you did?

THE DEFENDANT: Yes, Your Honor.

(Tr. 03/15/2010 at 29-31.)

Moreover, the plea agreement sets out the elements of the

offense of conspiracy (Plea Agreement (Doc. No. 748) at 1), and

as noted above, the petitioner acknowledged at the plea hearing

that he had read the plea agreement and discussed it with his

attorney. (See Tr. 03/15/2010 at 14-15.)

Thus, the petitioner has failed to show that his counsel

provided ineffective assistance by failing to educate him about

the sentence he faced if he pleaded guilty.

### 3.   Classification as a Career Criminal

The petitioner asserts that his attorney caused the

government to use a misdemeanor assault case against him to make

him a career criminal.  (Declaration at 1.)  This claim is

without merit.

-22-

Although the court increased the petitioner's offense level by two levels because he qualified as a career offender pursuant to U.S.S.G. § 4B1.1(b)(A), the petitioner does not explain how his attorney caused this outcome.  The PSR states:

> A review of Connecticut Superior Court transcripts indicates that the defendant does qualify as a career offender. Specifically, three qualifying convictions have been identified. On November 28, 2001, the defendant appeared in docket number S01S- CR00-0135251-S, where he pled guilty to possession with intent to sell narcotics, specifically, crack cocaine. On May 8, 2003, the defendant appeared in docket number S01S-CR02-0142739-S, where he pled guilty to possession of narcotics with intent to sell or distribute, specifically crack cocaine. On May 26, 2005, the defendant appeared in docket number F02B-CR05-0206226-S, where he pled guilty to possession of narcotics with intent to sell, specifically cocaine.

(PSR ¶ 21.)

To the extent that the petitioner argues that defense counsel did not explain that he would be classified as a career criminal when sentenced, this argument is also unavailing.  At the plea hearing, the court specifically asked the petitioner if he had discussed this issue with counsel:

> THE COURT: I think on page 4 [of the plea agreement] there's a reference to an issue concerning whether or not you may be a career offender. Have you discussed that with your attorneys?
>
> THE DEFENDANT: Yes, Your Honor

(Tr. 03/15/2010 at 16.)  Thus, the court finds that the petitioner has failed to show that his counsel provided

ineffective assistance by causing the government to use a misdemeanor assault case to make him a career criminal.

### 4. Counsel's Familiarity with the Prosecutor and Advice to Plead Guilty

The petitioner asserts that his counsel provided constitutionally ineffective assistance by telling him that he "knew the prosecutor," and the petitioner "would be much better [off] at sentencing [if he pled guilty] than if he would have gone to trial and lost," in which case he "would get a life sentence." (Petition at 5, Pet.'s Memorandum at 15.) This claim is without merit.

The petitioner fails to explain how his attorney's familiarity with the prosecutor caused him to enter into a plea agreement or made his counsel's assistance ineffective. The petitioner's assertions that his attorney had promised him a "low sentence" if he pled guilty and told him that he "would get a life sentence" if he went to trial and lost, contradict the petitioner's statement at the plea hearing that he had not received any promises outside the plea agreement itself:

> THE COURT: Other than the promises contained in the written agreement, has anyone made any promises that are causing you to plead guilty or any promises that are causing you to waive your right to appeal or collaterally attack your sentence?
>
> THE DEFENDANT: No, not at all, Your Honor.

-24-

(Tr. 03/15/2010 at 19-20.)  Moreover, to the extent defense counsel stated that the petitioner was likely to receive a shorter prison sentence if he pled guilty than if he was found guilty at trial, this advice was objectively reasonable, as that is typically the result.  Furthermore, the petitioner was sentenced to 150 months' imprisonment, which was below the guidelines range of 188 to 235 months.

### 5. Counsel's Statement About the Location of the Petitioner's Co-Defendants

The petitioner asserts that his attorney told him that "since [he] was in the state and not around any co-defendants that [he] should take the plea as there would not be anyone to bother [him]."  (Petition at 5.)  The petitioner does not explain what this statement means, how it influenced him to plead guilty, or how it in any way prejudiced him.  Thus, the petitioner has failed to allege an ineffective assistance of counsel claim with respect to this statement.

### B.  Waiver

The petitioner's motion to vacate, set aside or correct his sentence also fails because the petitioner waived his right to collaterally attack his sentence.[3]

---

[3] By memorandum dated October 14, 2014, the U.S. Department of Justice announced a policy with respect to waivers of claims of ineffective assistance of counsel, which provides in pertinent part:

"In no circumstance . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless." United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993) (dismissing defendant's appeal consistent with waiver in plea agreement).

In this case, the plea agreement that the petitioner entered into included a waiver of the right to appeal or collaterally attack his sentence:

> The defendant acknowledges that under certain
> circumstances he is entitled to challenge his
> conviction and sentence.  The defendant agrees not to
> appeal or collaterally attack in any proceeding,
> including but not limited to a motion under 28 U.S.C.
> § 2255 . . . the conviction or sentence imposed by the

---

For cases in which a defendant's ineffective assistance claim would be barred by a previously executed waiver, prosecutors should decline to enforce the waiver when defense counsel rendered ineffective assistance resulting in prejudice or when the defendant's ineffective assistance claim raises a serious debatable issue that a court should resolve.

See Mem. from James M. Cole, Deputy Att'y Gen., U.S. Dep't of Justice available at http://www.justice.gov/sites/default/files/press-releases/attachments/2014/10/15/dept-policy-on-waivers-of-claims-of-ineffective-assistance-of-counsel.pdf.

Here, the foregoing discussion shows that the petitioner's claim of ineffective assistance of counsel does not raise a serious debatable issue.

Court if that sentence does not exceed 188 months. . .
. The defendant acknowledges that he is knowingly and
intelligently waiving these rights.

(Plea Agreement at 5).  The petitioner's sentence was 150 months

of incarceration (less than the threshold of 188 months over

which the petitioner may collaterally challenge his sentence).

(See Pet.'s Memorandum at 1.)  To the extent that the petitioner

argues that he did not knowingly and voluntarily enter into the

plea agreement because defense counsel provided ineffective

assistance at the plea negotiation stage, those arguments are

addressed in Section III.A above.

## IV.  CONCLUSION

For the reasons set forth above, the Motion to Vacate, Set

Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Doc. No.

1) is hereby DENIED.  The court will not issue a certificate of

appealability because the petitioner has not made a substantial

showing of the denial of a constitutional right.  See 28 U.S.C.

§ 2253(c)(2).

The Clerk shall close this case.

It is so ordered.

Dated this 23rd day of September 2015, at Hartford,

Connecticut.


                    _____/s/AWT_____
                       Alvin W. Thompson
                    United States District Judge